**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Federal Trade Commission,<br><br>*Plaintiff*,<br><br>v.<br><br>RAG-Stiftung, Evonik Industries AG, Evonik Corporation, Evonik International Holding B.V., One Equity Partners Secondary Fund, L.P., One Equity Partners V, L.P., Lexington Capital Partners VII (AIV I), L.P., PeroxyChem Holding Company LLC, PeroxyChem Holdings, L.P., PeroxyChem Holdings LLC, PeroxyChem LLC, and PeroxyChem Cooperatief U.A.,<br><br>*Defendants*. | Civil Action<br>No. 1:19-cv-02337-TJK |

**JOINT STATUS REPORT**

Plaintiff and Defendants, through their undersigned counsel, submit the following Joint Status Report pursuant to the Court's Minute Order of October 17, 2019. Having met and conferred, the parties submit the following statement of their respective interests on the issues they wish to address at the status conference scheduled for October 22, 2019, at 2:00 p.m.

First, the parties have reached agreement with respect to the following issues and respectfully submit their consensus for the Court's consideration at the status conference on October 22:

1. **Opening arguments**.  The parties jointly propose that opening arguments will be useful to the Court and should be counted against each side's time.  The parties anticipate using 45 minutes to an hour per side for opening arguments, depending on the number of questions from the Court.

1

2. **Closing arguments**.  The parties jointly propose that closing arguments would be useful and suggest only that closing arguments should not take place immediately after the close of evidence. Closing arguments are less likely to be as useful to the Court then, given the lack of time for the Court and parties to review the trial record. The parties respectfully ask the Court to consider scheduling closing arguments either a few days after the conclusion of the trial or after the parties submit their Proposed Findings of Fact and Conclusions of Law, perhaps during the week of December 16.

3. **Videotape depositions in court**.  The parties jointly propose that a party who presents a witness on its witness list through deposition will do so by playing the videotape of the witness's deposition testimony in court.  Where no videotape is available, the sponsoring party will read the transcript into the record.  In either case, the sponsoring party will designate and provide to the opposing party those portions it intends to present by October 28, 2019.  The opposing party will make any counter designations by or before November 1, 2019, after which the parties will meet and confer within five days to determine whether any additional designations are required by either side.  Each side will be charged the time it takes to play or read the testimony it has designated.

4. **Scope of Cross-Examination and Re-direct**.  The parties jointly propose that there be no limitations on the scope of cross-examination and that the scope of re-direct shall be limited to the scope of cross-examination.

5. **Total number of exhibits**.  The parties jointly propose that each side be limited to 750 exhibits.

6. **Expert Reports**. The parties jointly propose that the experts' written reports be included in the evidentiary record.

7. **Deposition testimony of witnesses who do not testify live at trial**.  The parties jointly propose that the deposition testimony of witnesses who do not testify live at trial may be included in the evidentiary record and that either side may cite to those transcripts in its Proposed Findings of Fact and Conclusions of Law.

Second, despite good faith efforts to resolve these issues, the parties have not reached agreement on the extent to which certain out-of-court testimony and documents not presented through a witness at trial should be included in the evidentiary record.  The most practical consequence of this discussion concerns whether out-of-court testimony and documents not

presented through a witness at trial may be cited by the parties in their Proposed Findings of Fact and Conclusions of Law.  The parties set forth their respective positions below.

**Plaintiff's Position**: The following categories of evidence should be admitted and available for the Court's consideration: 1) expert reports; 2) all deposition transcripts; 3) declarations; and 4) all exhibits included on the parties' exhibit list, whether or not an exhibit is introduced through a witness at trial or in a deposition.

The purpose of this preliminary injunction hearing is for the Court to determine the FTC's likelihood of success on the merits in the upcoming FTC administrative proceeding.  In that proceeding, declarations, depositions, and all other "[e]vidence that constitutes hearsay may be admitted if it is relevant, material, and bears satisfactory indicia of reliability so that its use is fair."  FTC Rules of Practice, 16 C.F.R. § 3.43(b) (2018).  It would make no sense to restrict this Court's access to the evidence that will be considered in the administrative proceeding, which is why courts in this district have routinely considered these materials in preliminary injunction hearings considering FTC merger challenges, and allowed the parties to cite to such materials in post-trial proposed findings of fact.  *See, e.g., FTC v. Wilhelmsen*, 18-cv-00414, ECF #87 (D.D.C. May 23, 2018) (pursuant to Judge Chutkan's oral ruling on May 25, 2018, the FTC cited expert reports, declarations, and deposition testimony in its post-hearing Findings of Fact); *FTC v. Staples, Inc.*, 15-cv-02115, ECF #444 (D.D.C. Apr. 20, 2016) (the FTC cited expert reports, declarations, and deposition testimony in its post-hearing Findings of Fact); *FTC v. Sysco Corp.*, 15-cv-00256, ECF #208 (D.D.C. Aug. 13, 2015) (FTC's redacted exhibit list, included expert deposition transcripts, expert reports, deposition transcripts, and declarations).

Defendants recognize that courts routinely consider hearsay in preliminary injunction hearings.[1] They nonetheless suggest a strict approach to evidence in this matter, arguing that the FTC has had an opportunity to obtain information during its pre-Complaint investigation. This argument fails, as the FTC had just as much pre-Complaint discovery in *Wilhelmsen*, *Staples*, and *Sysco*. This Court should consider the same materials available to the court in each of those proceedings. The Court is capable of granting the appropriate weight to hearsay statements in declarations[2] and ordinary-course business documents, which is why courts in this district have routinely admitted exhibits *en masse* in FTC merger litigations. *See, e.g., Wilhelmsen*, 18-cv-00414, Hr'g. Tr. at 6-7 (D.D.C. May 29, 2019) (the Court admitted approximately 3,000 exhibits into the record *en masse* at the start of the PI Hearing); *FTC v. Staples, Inc.*, 15-cv-02115, ECF #220, at 1 (D.D.C. Mar. 15, 2016) (granted by Minute Order on May 14, 2015) (asking the Court in advance of the hearing that "all exhibits shall be deemed admissible and admitted"); *Sysco*, 15-cv-00256, Hr'g. Tr. at 82-83 (D.D.C. May 5, 2015) (the Court admitted Plaintiff's and Defendants' un-objected to exhibits into the record *en masse* at the start of the PI Hearing).

**Defendants' Position**: Defendants recognize that the Court has discretion to consider evidence at a preliminary injunction hearing that might not otherwise be admissible. The rationale for permitting greater latitude is that most preliminary injunction proceedings are held

---

[1] *See, e.g., FTC v. CCC Holdings Inc.*, No. 08-cv-2043, ECF # 66, at 2-3 (D.D.C. Jan. 30, 2009) ("The Court will consider hearsay evidence because the Federal Rules of Evidence do not apply to preliminary injunction hearings."); *see also University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) (preliminary injunction proceeding may use "procedures that are less formal and evidence that is less complete than in a trial on the merits"); 11A Charles Alan Wright, et al., FEDERAL PRACTICE AND PROCEDURE §2949 (3d ed. 2001) ("Affidavits are appropriate on a preliminary injunction motion").

[2] The hearsay nature of a declaration may influence the weight the Court affords the evidence, it does not foreclose admissibility. *Sysco*, 15-cv-00256, ECF #90, at 2. *See also Mullins v. City of New York*, 626 F.3d 47, 52 (2d Cir. 2010); *Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009); *Ty, Inc. v. GMA Accessories, Inc.*, 132 F.3d 1167, 1171 (7th Cir. 1997); *Levi Strauss & Co. v. Sunrise Int'l. Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995); *Sierra Club, Lone Star Chapter v. F.D.I.C.*, 992 F.2d 545, 551 (5th Cir. 1993).

before the moving party has had the opportunity to gather and marshal its supporting evidence. *Cobell v. Norton*, 391 F.3d 251, 261 (D.C. Cir. 2004) (explaining that preliminary injunction proceedings "are streamlined, intentionally, because the fuse is often so short"). Here, however, the FTC has had more than sufficient time to gather all of the evidence that it intends to rely on to attempt to prove its claim on the merits. Its investigation began in December 2018, and – before even filing its Complaint – the FTC received over two million pages of documents from Defendants, took 12 investigational depositions, and contacted more than 46 third parties that it viewed as likely to have discoverable information. Following the filing of the Complaint, it served an additional 26 document subpoenas and took another 36 depositions of the Defendants' employees and third parties. Further, the Court has generously given each side ample opportunity to present the testimony of up to 12 fact witnesses and an economic expert witness in court, where those witnesses will be subject to cross-examination and the Court will be able to make critical credibility judgments. Under these circumstances, and for the reasons set forth below, Defendants propose three modest limitations on admissibility of evidence to facilitate a more reliable and streamlined evidentiary record for this proceeding:

1. **Deposition transcripts of witnesses who testify live at trial, including the parties' experts[3].**

    Defendants propose that transcripts from depositions and/or investigational hearings should not be admitted into evidence for witnesses who also testify live at trial except to the extent they are used in court for impeachment purposes. Such deposition testimony is (1) cumulative to the live testimony that will be offered and (2) irrelevant because it does not have any tendency to make any fact more or less probable in light of the duplicative live testimony. Fed. R. Evid. 401(a). If either side has developed testimony it believes is or may be probative

---

[3] Both parties' experts are expected to testify live at trial.

and material to this matter, the Court has provided ample opportunity for that testimony to be presented at trial.

2. **Declarations**.

Defendants propose that declarations should not be admitted into evidence unless introduced through a witness testifying live at trial or in a deposition. The declarations the FTC seeks to admit into evidence have little probative value because they were largely drafted by the FTC through *ex parte* communications with declarants during the agency's pre-Complaint investigation. When those declarants were disclosed to the Defendants and deposed, their testimony revealed that the process the FTC used to obtain its declarations was substantially similar for all third parties: the FTC contacted third parties to ask them for a declaration in the spring of 2019,[4] sometimes offering that the third party would be able to avoid a deposition if it provided a declaration; the FTC then drafted the declarations itself,[5] often reviewing them over the phone with the third parties; and then the FTC sent the final declaration to the third party for signature. Tellingly, some third parties had to make substantial changes to correct the declarations as drafted by the FTC.[6]

The FTC's process of gathering declarations was previously criticized by Judge Sullivan during the preliminary injunction hearing in *FTC v Staples, Inc.*, 190 F.Supp.3d 100 (D.D.C.

---

[4] For example, one third party declarant gave the following testimony at his deposition: "Q. Did the FTC request that you give a declaration? A. Yes. Q. Did the FTC request anything else from [the company]? A. […] whatever they asked for, we gave them."

[5] One third party declarant testified as follows: "Q. Okay. And who prepared the declaration? A. The FTC. […] Q. Prior to the FTC's preparation of the draft declaration that you ended up signing, did the FTC ask you what statements you would be willing to declare to? I don't recall that they did."

[6] During her deposition, one third party declarant testified, "Q. Is there a specific point that you can recall now that you deleted from your draft declaration? A. Yes […] I believe we deleted a sentence online, starting at the end of line 42. We – "we would consider purchasing hydrogen peroxide manufactured outside of North America." I think originally it says we would not consider, but we assessed that and we said we would consider based on if it met our grade, reached -- had the quality and volume and had a reliable and cost-effective supply chain."

2016). Judge Sullivan expressed concern that the FTC tried to elicit untrue statements from a witness when pursuing its declaration, observing from the bench that "[I]t's very disturbing when the United States of America . . . attempts to persuade any declarant or witness to say something for the benefit of the United States of America that is not true."[7] In his opinion, Judge Sullivan noted that he had expressed concerns about this procedure, but that "no evidence of an improper motive on the part of the FTC was ever presented." *Id.* at 136 n.14. (D.D.C. 2016). Nevertheless, the *ex parte* nature of the declarations, and their collection at an early stage of this case from witnesses who did not have all of the relevant information (e.g., the parties' agreement to divest the Prince George plant) makes them of little, if any, probative value. Admission of the declarations is all the more unnecessary now that the FTC has deposition transcripts for each of the declarants and has the ability to call them to testify live at trial.

3. **<u>Documents not introduced through a witness at trial or in deposition</u>**.

Defendants propose that the Court should not allow documents to be introduced into evidence when no witness has testified at trial or in a deposition to lay the foundation for the document. When Judge Leon had the opportunity to consider this issue last year in advance of the trial in *United States v. AT&T Inc.*,[8] he pointed out that the parties may need a sponsoring witness to lay the foundation for third party emails to qualify as either business records under Federal Rule of Evidence 803(6) or non-hearsay statements of a party opponent under Rule 801(d)(2), observing:

---

[7] Preliminary Injunction Hr'g Tr. 865:18-21, *FTC v Staples, Inc.*, Case No. 15-2115 (D.D.C. 2016) (ECF No. 477); *see also id.* at 825:24 – 826:7 ("THE COURT: Were you surprised that the government was telling you what to say and not say? THE WITNESS: Yes. THE COURT: Why? THE WITNESS: Well, we should say what we think is -- is -- THE COURT: Is true? THE WITNESS: Is true. THE COURT: I totally agree with that.").

[8] 310 F. Supp. 3d 161 (D.D.C. 2018), *aff'd sub nom. United States v. AT&T, Inc.*, 916 F.3d 1029 (D.C. Cir. 2019).

> The mere fact that an email is captured on a server does not make it, per se, a business record, as we all know. So then it's a question of context, and it's a question of the witness fleshing out the circumstances under which the email was sent, was it the random thinking of the person in a spur of a moment, or was it a direction from his boss to send out whatever email he or she sent out under the circumstances.

Pretrial Conference Tr. 17:7-14, *United States v. AT & T Inc.*, Civil Action No. 17-2511 (D.D.C. Mar. 15, 2018) (ECF No. 96).  After the extensive opportunity the FTC has had to develop through discovery the factual context for any documents it has collected and considers probative, it should not be permitted to rely on documents concerning which it has purposely chosen not to develop context or understanding.

Third and finally, as directed by the Court's Minute Order, the Parties will be prepared to discuss whether the exhibits to the FTC's Motion for Preliminary Injunction should remain sealed, in whole or in part, under the factors set forth in *United States v. Hubbard*, 650 F.2d 293, 31722 (D.C. Cir. 1980).  The Parties will also be prepared to discuss the Court's preferences with respect to the use of confidential information during the upcoming trial.

Date: October 18, 2019
Washington, DC

Respectfully submitted,

/s/ James Rhilinger
James Rhilinger
(D.C. Bar 472255)
Deputy Assistant Director
Bureau of Competition
Federal Trade Commission
Mergers II Division
400 Seventh Street, SW
Washington, DC 20024
Telephone: (202) 326-2871
Email: jrhilinger@ftc.gov
*Counsel for Plaintiff Federal Trade Commission*

/s/ Eric Mahr
Eric Mahr
Freshfields Bruckhaus Deringer US LLP
700 13th Street, NW
10th Floor
Washington, DC 20005-3960
Tel: (202) 777-4545
Email: eric.mahr@freshfields.com
*Counsel for Defendants RAG-Stiftung, Evonik Industries AG, Evonik Corporation, and Evonik International Holding B.V.*

/s/ Mike Cowie
Mike Cowie
Dechert LLP
1900 K St, NW
Washington, DC 20006
Tel: (202) 261-3339
Email: mike.cowie@dechert.com
*Counsel for Defendants One Equity Partners Secondary Fund, L.P., One Equity Partners V, L.P., Lexington Capital Partners VII (AIV I), L.P., PeroxyChem Holding Company LLC, PeroxyChem Holdings, L.P., PeroxyChem Holdings LLC, PeroxyChem LLC, and PeroxyChem Cooperatief U.A.*

9